UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| MICHAEL P. DONOVAN, as he is ADMINISTRATOR, LOCAL 103, I.B.E.W. HEALTH BENEFIT PLAN; ELECTRICAL WORKERS' PENSION FUND, LOCAL 103, I.B.E.W.; ELECTRICAL WORKERS' DEFERRED INCOME FUND, LOCAL 103, I.B.E.W.; JOINT APPRENTICESHIP AND TRAINING FUND; and DARRIN E. GOLDEN, as he is EXECUTIVE SECRETARY-TREASURER, NATIONAL ELECTRICAL BENEFIT FUND, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) |  |
| Plaintiffs, | ) ) |  |
| v. | ) ) | No. 1:25-cv-10169-JEK |
| RICHARD W. REID ELECTRICAL COMPANY INC., | ) ) ) |  |
| Defendant, and | ) ) |  |
| SANTANDER BANK, | ) ) |  |
| Trustee. | ) ) |  |

**MEMORANDUM AND ORDER ON PLAINTIFFS'
RENEWED MOTION FOR DEFAULT JUDGMENT**

**KOBICK, J.**

Plaintiffs Michael Donovan and Darrin Golden filed this action, on behalf of certain benefits funds for the International Brotherhood of Electrical Workers ("IBEW") Local 103 union, against defendant Richard W. Reid Electrical Company, Inc. ("RWR") to recover unpaid contributions, interest, and damages owed to those funds. After RWR was served but failed to answer or otherwise defend this case, the clerk entered a notice of default against it. Pending before

the Court is the plaintiffs' renewed motion for default judgment against RWR. For the reasons that follow, the Court will grant the motion and enter judgment for the plaintiffs in the amount of $437,845.04.

## BACKGROUND

Because RWR has defaulted, the following facts, which are drawn from the complaint, are deemed true for the purpose of establishing liability. *See Universitas Educ., LLC v. Granderson*, 98 F.4th 357, 377 (1st Cir. 2024).

The plaintiffs brought this action against RWR in January 2025 on behalf of five benefits funds for the IBEW Local 103 union that are governed by the Employee Retirement Income Security Act of 1974 ("ERISA"). ECF 1, ¶¶ 3-8. Donovan is the Administrator of four of those ERISA funds: IBEW's Local 103 Health Benefit Plan, its Electrical Workers' Pension Fund, its Electrical Workers' Deferred Income Fund, and the Joint Apprenticeship and Training Fund. *Id.* ¶¶ 3-6. Golden is the Executive Secretary-Treasurer of the other ERISA fund: the National Electrical Benefit Fund. *Id.* ¶ 7. These five funds ("ERISA Funds") are all multi-employer plans within the meaning of section 3(37) of ERISA, 29 U.S.C. § 1002(37). *Id.* ¶ 8.

RWR signed a letter of assent in 1988 authorizing the National Electrical Contractors Association ("NECA") to serve as its collective bargaining representative for collective bargaining agreements between NECA and the IBEW Local 103 union. *Id.* ¶ 11. RWR is now a party to a collective bargaining agreement ("CBA") between NECA and the union, pursuant to which it must make contributions to the ERISA Funds and deduct union dues from employees' wages. *Id.* ¶¶ 11-13. RWR did not, however, pay benefit contributions to the ERISA Funds or make wage deductions from August 2024 to August 2025, as required by the CBA. *Id.* ¶¶ 12-17; ECF 18, ¶ 3. As a result, RWR owes the ERISA Funds $437,845.04 in benefit contributions, wage deductions,

interest, late fees, and litigation costs. ECF 18, ¶¶ 3-4; *see* ECF 16. Santander Bank holds RWR's assets. ECF 1, ¶ 10.

The plaintiffs bring two claims against RWR. Count I asserts that RWR's failure to make benefit contributions owed on behalf of covered employees violates ERISA, 29 U.S.C. § 1145, and Count II asserts that RWR's failure to pay benefit contributions, wage deductions, interest, earnings adjustments, and legal fees and costs of collection amounts to a breach of the CBA. ECF 1, ¶¶ 22-27. RWR did not file an answer or otherwise defend the case. As the plaintiffs requested, the clerk entered a notice of default under Federal Rule of Civil Procedure 55(a) in April 2025. ECF 7, 8. After the Court denied without prejudice their initial motion for default judgment, the plaintiffs filed a renewed motion for default judgment pursuant to Rule 55(b)(1) in October 2025, requesting recovery of unpaid contributions, interest, damages, attorneys' fees, and litigation costs. ECF 16.

## DISCUSSION

Federal Rule of Civil Procedure 55 "provides a two-step process for default judgment." *Granderson*, 98 F.4th at 377. First, "the clerk must enter" a notation of default "[w]hen a party against whom judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise." Fed. R. Civ. P. 55(a). Second, default judgment may be entered if (1) the court "has jurisdiction over the subject matter and parties," (2) "the allegations in the complaint state a specific, cognizable claim for relief," and (3) "the defaulted party had fair notice of its opportunity to object." *In re The Home Restaurants, Inc.*, 285 F.3d 111, 114 (1st Cir. 2002). Where "the plaintiff's claim is for a sum certain" and is supported by "an affidavit showing the amount due," default judgment may, "on the plaintiff's request," be entered

without a hearing. Fed. R. Civ. P. 55(b)(1). Because all three prerequisites are met here, default judgment is warranted.

I. **Jurisdiction.**

The Court has subject matter jurisdiction over this federal question action pursuant to 28 U.S.C. § 1331. *See also* 29 U.S.C. § 1132(e)(1) (establishing federal court jurisdiction in ERISA actions); ECF 1, ¶ 2; *United Elec., Radio & Mach. Workers of Am. v. 163 Pleasant St. Corp.*, 960 F.2d 1080, 1085 (1st Cir. 1992).

The Court also has personal jurisdiction over RWR. In a federal question case, like this one, "a federal court's power to assert personal jurisdiction is geographically expanded," and "the Constitution requires only that the defendant have the requisite minimum contacts with the United States, rather than with the particular forum state (as would be required in a diversity case)." *United Elec.*, 960 F.2d at 1085 (quotation marks omitted). "[S]ufficient contacts to justify the assertion of personal jurisdiction exist whenever the defendant is served within the sovereign territory of the United States," provided service is "grounded within a federal statute or Civil Rule." *Id.* (brackets and quotation marks omitted). ERISA provides that a defendant "may be served in any . . . district where a defendant resides or may be found." 29 U.S.C. § 1132(e)(2); *see Gambino v. Radiant Elec., LLC*, No. 17-cv-10034-ADB, 2017 WL 6544823, at *2 (D. Mass. Dec. 21, 2017) (explaining that ERISA allows for nationwide service of process and identifying Fed. R. Civ. P. 4(k)(1)(C) as the mechanism for service under ERISA). The plaintiffs filed a return of service—which "serves as *prima facie* evidence that service was validly performed," *Blair v. City of Worcester*, 522 F.3d 105, 111 (1st Cir. 2008)—in February 2025 indicating that they had served RWR with a summons and a copy of the complaint on January 28, 2025 through its registered agent, Richard Reid. ECF 4. Since RWR "was lawfully served within the United States pursuant to a federal statute, under

the law of this circuit, this Court has personal jurisdiction over" RWR. *Gambino*, 2017 WL 6544823, at *2 (quotation marks omitted).

## II. Claims for Relief and Remedies.

The plaintiffs adequately allege violations of the CBA and section 515 of ERISA, 29 U.S.C. § 1145. RWR is liable as a result.

Accepting the factual allegations in the complaint as true, RWR is a party to the CBA with the IBEW Local 103 union. ECF 1, ¶¶ 11-12; *see* ECF 1-3; *Granderson*, 98 F.4th at 377 ("A defaulted party is deemed to have conceded the truth of the factual allegations in the complaint as establishing the grounds for liability as to which damages will be calculated." (quotation marks omitted)). This CBA—effective September 1, 2023 through August 31, 2028—requires RWR to make benefit contributions to the ERISA Funds for every hour worked by covered employees and to calculate those employees' wage deductions. ECF 1, ¶¶ 12-13. Under the CBA, RWR has until the fifteenth of each month to make such contributions and deductions, and to submit remittance reports detailing those contributions and deductions. *Id.* ¶¶ 14-15. If it fails to do so, RWR must "pay a delinquent fee" in an "amount to be determined by the Trustees" of the ERISA Funds. ECF 1-3, § 6.38(f). "The Trustees of the [ERISA] Funds have determined that the delinquent fee to be charged on the late payment of benefit contributions be set at 1.5 percent per month from the date due until the date paid." ECF 1, ¶ 15.

The CBA also provides that, in the event of default, RWR is "bound by rules and regulations promulgated by the Trustees of the [ERISA] Funds [regarding] collection procedures, including but not limited to legal fees and interest charges." ECF 1-3, § 4.9. Those Trustees have issued such a collections policy that makes RWR "liable for all costs of collection, including but not limited to court costs, attorneys' fees and expenses, and accountants' or auditors' fees" and

requires RWR to "pay an assessment [of] liquidated damages equal to the amount of the outstanding delinquent contributions owed as of December 1st of such calendar year multiplied by the percentage used to allocate net investment income to individual accounts for the year ending on such November 30th." ECF 1, ¶ 16.

    Despite its contractual obligations, RWR did not pay benefit contributions to the ERISA Funds or make wage deductions between August 2024 and August 2025. *Id.* ¶ 17; ECF 18, ¶ 3. Nor has RWR filed remittance reports for January 2025 through August 2025, which means that the Funds must "rely on estimated amounts due, rather than confirmed amounts." ECF 18, ¶ 3. RWR did provide such reports for August 2024 through December 2024. ECF 1, ¶ 19.

    The CBA states that "all contributions and deductions for actual hours worked . . . shall be paid monthly no later than the fifteenth (15th) of the month following the incurring of the obligation." ECF 1-3, § 6.38(f). It also states that if RWR "becomes delinquent, . . . [it] shall be required to furnish employment records" by "not later than the fifteenth (15th) of the month following the incurring of the obligation." *Id.* § 4.9. Section 515 of ERISA, in turn, provides that "[e]very employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement." 29 U.S.C. § 1145. The allegations in the complaint, accepted as true, establish that RWR failed to submit remittance reports and make the requisite contributions to the ERISA Funds in accordance with the terms of the CBA. Consequently, RWR is liable under the CBA and section 515 of ERISA. *See Goldstein v. Nat'l Shoring LLC*, No. 23-cv-10924-JEK, 2024 WL 3416003, at *3 (D. Mass. July 15, 2024) (finding defaulted defendant liable under section 515 of ERISA); *Gambino*, 2017 WL 6544823, at *3 (same).

Having concluded that the allegations in the complaint establish liability, the Court now turns to remedies. "[I]f arriving at the judgment amount involves nothing more than arithmetic—the making of computations which may be figured from the record—a default judgment can be entered without a hearing of any kind." *HMG Prop. Invs., Inc. v. Parque Indus. Rio Canas, Inc.*, 847 F.2d 908, 919 (1st Cir. 1988). As discussed, the CBA provides that if RWR were delinquent in paying contributions and deductions, RWR would be charged interest on the delinquency at the rate of 1.5% per month and assessed liquidated damages. ECF 1, ¶¶ 15-16; *see* ECF 1-3, § 6.38(f). Donovan attests that because RWR has not filed remittance reports for January 2025 through August 2025, the ERISA Funds have had "to rely on estimated amounts due, rather than confirmed amounts" of the benefit contributions. ECF 18, ¶ 3. Based on his calculations, RWR owes those Funds: $294,678.75 in reported and estimated benefits; $13,520.73 in working assessment payroll deductions (i.e., union dues); $13,031.07 in holiday and vacation payroll deductions; $33,855.12 in interest (at 1.5% per month) on unpaid benefits; $21,246.51 in interest (also at 1.5% per month) on benefits that were paid late; $2,602.23 on interest on deferred income; and $55,101.63 in liquidated damages. *Id.* ¶¶ 3-4. The plaintiffs are therefore entitled to recovery of those amounts for a total of $434,036.04.

The plaintiffs are also entitled to attorneys' fees and costs under the CBA. ECF 1-3, § 4.9; ECF 1, ¶ 16.[1] The $489 sought in litigation costs reasonably includes the $405 filing fee and the $84 fee for the process server to serve the summons and complaint on RWR. ECF 18-1, at 7. The $3,320 in attorneys' fees requested by the plaintiffs—consisting of $1,640 for their current counsel and $1,680 for their prior counsel—is also reasonable. ECF 18, ¶ 5; *see* ECF 18-1; ECF 20, ¶ 3;

---

[1] Section 502 of ERISA similarly provides that where, as here, "a judgment in favor of the plan is awarded, the court shall award the plan . . . reasonable attorney's fees and costs of the action, to be paid by the defendant." 29 U.S.C. § 1132(g)(2).

ECF 20-1. "When fashioning a fee award, the district court ordinarily starts by constructing what has come to be known as the lodestar," which is generally "the product of the number of hours appropriately worked times a reasonable hourly rate or rates." *Hutchinson ex rel. Julien v. Patrick*, 636 F.3d 1, 13 (1st Cir. 2011). As "[t]he party seeking the award," the plaintiffs bear "the burden of producing materials that support the request," which "should include counsel's contemporaneous time and billing records, suitably detailed, and information [about] the law firm's standard billing rates." *Id.* It is also "the court's prerogative . . . to winnow out excessive hours." *Gay Officers Action League v. Puerto Rico*, 247 F.3d 288, 296 (1st Cir. 2001).

Here, the plaintiffs have produced detailed time and billing records as well as two affidavits, which show that their prior counsel charged a billing rate of $300 per hour and their current counsel charges $400 per hour. ECF 18-1; ECF 20, ¶ 3; ECF 20-1. Upon review of the time and billing records, the Court concludes that plaintiffs' current and prior attorneys spent a reasonable amount of time preparing and filing the complaint, serving RWR, preparing and filing the request for entry of default, and preparing and filing the motion for default judgment.[2] Accordingly, the plaintiffs are entitled to $3,809 in attorneys' fees and costs.[3]

### III. <u>Fair Notice.</u>

Finally, RWR was properly served by the plaintiffs on January 28, 2025, and was mailed copies of the return of service, notice of default judgment, and the Court's standing order on motions for default judgment on April 22, 2025. ECF 4, 10. RWR has had since January 2025 to respond to the complaint, since June 2025 to respond to the initial motion for default judgment, and

---

[2] The plaintiffs' current counsel did not submit records associated with the cost of filing this renewed motion for default judgment. *See* ECF 20-1.

[3] The motion for default judgment requests a total recovery in the amount of $437,845.05. ECF 16. But because the plaintiffs' affidavits justify a total recovery that adds up to $437,845.04, judgment will enter for them in the latter amount.

since October 2025 to respond to the renewed motion for default judgment. It has not appeared to defend itself in this action. Accordingly, RWR "had fair notice of its opportunity to object." *In re The Home Restaurants*, 285 F.3d at 114.

## CONCLUSION AND ORDER

For the foregoing reasons, the plaintiffs' renewed motion for default judgment, ECF 16, is GRANTED. Judgment shall enter for the plaintiffs in the amount of $437,845.04.

SO ORDERED.

Dated: November 3, 2025

/s/ Julia E. Kobick
JULIA E. KOBICK
UNITED STATES DISTRICT JUDGE